# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES RUTHERFORD MELL,

Defendant-Appellant.

UNPUBLISHED
December 4, 2014

No. 316808
Oakland Circuit Court
LC No. 2013-244740-FC

Before: BORRELLO, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, and six counts of unauthorized use of a financial transaction device, MCL 750.157n(1). The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to concurrent prison terms of 25 to 60 years for the armed robbery conviction, and 2 to 15 years for each financial transaction device conviction. Defendant appeals as of right. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.

## I. BACKGROUND

Defendant's convictions arise from the armed robbery of 71-year-old Joyce Graham outside a Troy restaurant on the afternoon of January 9, 2013. As Graham walked to her car, a man wearing a black ski mask emerged from a vehicle, pointed a gun at her, and demanded her purse. Graham complied and the man drove away. Among other items, Graham's purse contained several credit cards, her cell phone, and car keys. Although the robber was wearing a ski mask, defendant's stature, race, and clothing were consistent with the robber's appearance, and the vehicle used during the offense was similar to a vehicle registered to defendant's fiancée, Louise Plewa. The police pinned Graham's cell phone in areas near the scene of the robbery, and, shortly after the robbery, defendant and Plewa were captured on surveillance video purchasing items with the stolen credit cards at different establishments. Graham's purse containing her wallet and keys, her eye glasses, property purchased with the stolen credit cards, a ski mask, and simulated guns were found in defendant and Plewa's home, which was a quarter mile from the restaurant where the armed robbery occurred. Graham's cell phone, two simulated guns, and receipts from establishments where the stolen credit cards were used were found in Plewa's vehicle, which defendant was driving when he was arrested. At trial, the defense admitted that defendant participated in using the stolen credit cards, but denied that he was the

-1-

person who robbed Graham of her property. The defense theory was that defendant was misidentified as the robber and was unaware of how Plewa acquired the credit cards. The defense noted that, shortly after the robbery, the police investigated another white male, who was driving a similarly-described SUV with a similar license plate number.

## II. DEFENDANT'S STATEMENT

On appeal, defendant first argues that the trial court erred by allowing his custodial police statement to be admitted at trial. Defendant argues that the statement was inadmissible because it was obtained in violation of his right to counsel, and because it was not knowingly, understandingly, and voluntarily made. Only the former ground was raised below. Because an objection on one ground is insufficient to preserve an appellate challenge based on a different ground, *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003), only defendant's argument relating to his right to counsel is preserved. With regard to that issue, we review de novo the trial court's ultimate decision regarding his motion to suppress, but review the court's factual findings for clear error. *People v Williams*, 240 Mich App 316, 319; 614 NW2d 647 (2000). Deference is given to the trial court's assessment of the weight of the evidence and the credibility of the witnesses. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). A finding is clearly erroneous if it leaves the reviewing court with a definite and firm conviction that a mistake has been made. *People v Givans*, 227 Mich App 113, 119; 575 NW2d 84 (1997). Regarding defendant's unpreserved claim that his statement was not knowingly, understandingly, and voluntarily made, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

## A. RIGHT TO COUNSEL

"A criminal defendant has a constitutional right to counsel during interrogation." *People v Tierney*, 266 Mich App 687, 710-711; 703 NW2d 204 (2005) (citation omitted). Once a defendant invokes his right to counsel, the police must terminate their interrogation immediately and may not resume questioning until counsel arrives or the defendant initiates further communication with the police. *Edwards v Arizona*, 451 US 477, 484; 101 S Ct 1880; 68 L Ed 2d 378 (1981); *People v Elliott*, 494 Mich 292, 302; 833 NW2d 284 (2013). Evidence obtained in violation of this principle is subject to suppression. *People v Harris*, 261 Mich App 44, 55; 680 NW2d 17 (2004). However, the defendant's invocation of his right to counsel must be unequivocal. *Tierney*, 266 Mich App at 711. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.*, quoting *Davis v United States*, 512 US 452, 457, 459; 114 S Ct 2350; 129 L Ed 2d 362 (1994).

In making its ruling on the admissibility of defendant's statement, the trial court considered the testimony of the interviewing detective and defendant at an evidentiary hearing, and an audio recording of defendant's police interview. The prosecutor played the following portion of the audio recording of the interview:

> *Detective Cooney*: You want to talk to a lawyer?

-2-

*Defendant:* Kinda.

*Detective Cooney*: I, I can't go with kind of. I've got to go with yes or no. Okay? Like, like we explained to you, if at any point you don't want to continue on with the interview, you don't have to stay with—you don't have to continue on with the interview.

*Defendant:* I just want to know what I'm looking at, what is going on, before I make that decision. I'm not trying to hide anything.

*Detective Cooney*: Okay. Well, it, it is a robbery that I want to talk to you about. Okay?

*Detective Shuler*: And we can, we can explain to you exactly what's going on, answering questions that you may have, too. But we've got to get through this first. And at any time you can ask us to leave and we're done.

*Defendant:* Okay.

*Detective Cooney*: Do you want to talk to a lawyer before, before any questions?

*Defendant:* No. As long as I can stop it.

*Detective Shuler*: Yes.

*Detective Cooney*: Yes. You can stop at any point. And the third one is, will you waive the right so remain silent and answer any questions we may ask of you. Again, if you don't want to answer something, you don't have to.

Okay. What I need you to do is at the top of the statement, if you can just write your name up there for me.

Defendant agreed that he stated that he did not want a lawyer, but maintained that he had initially asked for one. The interviewing detectives denied that defendant made an unequivocal request for an attorney. Defendant admitted that when he subsequently asked for an attorney, the detective stopped asking him questions.

In denying defendant's motion to suppress on the basis that his request for an attorney was denied, the trial court explained:

What was telling . . . is that there was the "kind of.'' I heard that on the tape, the "kind of'' reference, and clearly the detective was talking about an attorney.

And I would agree, I don't think it's up to the police to determine whether or not someone wants one or not but they have to state it unequivocally. And the fact that he then—I'm sorry, Mr. Mell then says, all right, I don't want an attorney

as long as I can stop whenever I want. So he was clearly in charge and knew what was going on . . . .

Clearly, the trial court found credible the detective's statement that defendant never made an unequivocal request for an attorney prior to the commencement of questioning. It is equally clear that the trial court did not find defendant's assertion to the contrary credible. We will defer to the "trial court's superior ability to view the evidence and witnesses." *People v Peerenboom*, 224 Mich App 195, 198; 568 NW2d 153 (1997). However, such deference is supported by the record, namely, by the audio recording. When defendant was being advised of his *Miranda*[1] rights, he was directly asked whether he wanted to talk to a lawyer. He stated, "Kinda." The trial court opined that this request was not unequivocal. After defendant's response, the detective sought clarification whether defendant wanted a lawyer. Defendant responded that he did not want an attorney, as long as he could stop the interview at any time. The trial court found that this demonstrated that defendant "was clearly in charge and knew what was going on."

The applicability of the defendant's *Miranda* rights required the trial court to "determine whether the accused *actually invoked* his right to counsel." *Fare v Michael C*, 442 US 707, 719; 61 L Ed 2d 197, 99 S Ct 2560 (1979). To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. See *Connecticut v Barrett*, 479 US 523, 529-530, n. 3; 93 L Ed 2d 920; 107 S Ct 828 (1987). Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v Wisconsin*, 501 US 171, 178; 115 L Ed 2d 158; 111 S Ct. 2204 (1991). But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, precedents do not require the cessation of questioning. See *Edwards v Arizona*, 451 US at 485.68 L Ed 2d 378, 101 S Ct. 1880 (1981), (impermissible for authorities "to reinterrogate an accused in custody if he has *clearly asserted* his right to counsel") (emphasis added). Rather, the suspect must unambiguously request counsel. As the United States Supreme Court has observed, "a statement either is such an assertion of the right to counsel or it is not." *Smith v Illinois*, 469 U.S. at 97-98 (brackets and internal quotation marks omitted). A suspect must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect. See *Moran v Burbine*, 475 US 412, 433, n. 4; 89 L Ed 2d 410; 106 S Ct 1135 (1986) ("The interrogation must cease until an attorney is present *only* if the individual states that he wants an attorney") (citations and internal quotation marks omitted).

In this case the trial court correctly found that defendant did not unequivocally invoke his right to counsel at the beginning of the interview. As previously stated, the police are not required to cease questioning "when the suspect *might* want a lawyer." *Davis*, 512 US at 462 (emphasis in original). The documentary evidence of defendant's *Miranda* waiver-of-rights

---

[1] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-4-

form also supports the trial court's finding that defendant knowingly and willingly waived his right to consult with an attorney. It is undisputed that defendant was advised of his *Miranda* rights, indicated that he understood those rights, initialed each right, and signed a written waiver. Defendant has not demonstrated that the trial court's findings are clearly erroneous. Consequently, the trial court did not err in denying defendant's motion to suppress his statement. Accordingly, defendant is not entitled to relief on this issue.

## B. VOLUNTARY, KNOWING, AND INTELLIGENT

Statements of a defendant made during a custodial interrogation are inadmissible unless the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966); *People v Abraham*, 234 Mich App 640, 644; 599 NW2d 736 (1999). The "test of voluntariness is whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired." *Givans*, 227 Mich App at 121. Whether a statement was voluntary is determined by examining police conduct, while whether it was made knowingly and intelligently depends in part upon the defendant's capacity to understand the warnings given. *People v Howard*, 226 Mich App 528, 538; 575 NW2d 16 (1997). The following factors should be considered when determining the admissibility of a statement:

> The age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

No single factor is conclusive. *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988); *People v Fike*, 228 Mich App 178, 181-182; 577 NW2d 903 (1998).

In this case, the interviewing detective informed defendant of his *Miranda* rights, and defendant appeared to fully understand his rights and waived them. During the evidentiary hearing, defendant admitted that he knew that he could remain silent, had a right to have an attorney present, and that he could have stopped talking at any time and did not have to answer the detective's questions. Defendant was 38 years old, could read and write, and there is no indication that he had any learning disabilities. Although defendant had earlier consumed alcohol, throughout the interview he appeared to fully understand the detective's questions and gave appropriate answers to the questions. In fact, the interviewing officer waited 17 hours before conducting the interview to ensure that defendant was no longer under the influence of alcohol or any substances. The fact that defendant clearly asserted his right to counsel 30 minutes into the interview further supports that he possessed an understanding of his

constitutional rights. Moreover, defendant had prior experience with the police. The totality of the circumstances demonstrate that defendant knowingly and intelligently waived his Fifth Amendment rights.

With regard to whether defendant's statement was voluntary, the interview was conducted in the hospital, and lasted for approximately 30 minutes. There is no evidence that defendant was threatened, abused, or promised anything in exchange for his statement. There is likewise no evidence that he was deprived of sleep, food, or drink. Although defendant had previously consumed alcohol and drugs, there is no indication that he was still suffering the effects of any of those substances to a degree that he was not operating of his own free will. The record does not support defendant's claim that his statement was not voluntarily given. Accordingly, defendant is not entitled to relief on this issue.

## II. DEFENDANT'S REQUEST FOR AN ATTORNEY

Next, defendant argues that he is entitled to a new trial because the prosecutor impermissibly elicited from the interviewing detective that he requested an attorney at the end of his interview. We conclude that this claim is waived.

Before the detective testified, the parties agreed that defendant's request to consult with an attorney would be redacted from the interview transcript. Subsequently, the detective read from a copy of the transcribed interview that had not been redacted. The following exchange occurred:

> *The Detective*: He responded with, can you give me some time? *I need to talk to my attorney.* I said, okay. Well, what's going to happen, is you requested an attorney. I can't talk to you anymore.
>
> He said, okay.
>
> *Q.* All right. Now, Detective, before the defendant ends the interview, you—it's not in the transcript—you again say to him, essentially, look, we know you did it.
>
> *A.* Correct.
>
> *Q.* And that's the point the ends the interview.
>
> *A.* Correct.
>
> *Q.* So I want to ask you, in between your, your questioning him, look, we know you did it or whatever it is, and he says he's ending the interview, how does he act? Not what he says, but he asks between your last question and his request to end the interview?
>
> *A.* There's a long pause before he, before he requests.
>
> *Q.* Before he requests—

*A.* Before he ended.

*Q.* Before he requested to end the interview?

*A.* Correct.

*Q.* Okay. So I didn't mean to interrupt you, I just wanted to understand the sequence. You asked the question, he requests to end the interview?

*A.* Correct.

*Q.* Between the time you asked the question and he requested to end the interview, how does he act? How did he respond?

*A.* There's a long pause. [Emphasis added.]

Defense counsel waited until a break in the proceeding to raise the matter. The trial court agreed that there was an agreement and that the reference should have been taken out. The following exchange then occurred:

*Defense counsel:* Apparently it was not crossed off and that may have been my fault. But I just want the record to reflect because I think that kind of thing to object, it just highlights it more.

*The court:* This is what I would hope, is that whatever a transcript goes in [as an exhibit to the jury] does not have that.

*Defense counsel: That's what I would ask, Judge.* [Emphasis added.]

The prosecutor indicated that he would redact the last page of the interview transcript. In response to the court's asking if there was anything else for the record, defense counsel responded, "Nothing, Judge." By expressly requesting the remedy of redacting the interview transcript that the jury would receive as an exhibit and agreeing to proceed with that remedy, defendant has waived any right to challenge the reference to defendant's request for an attorney. *People v Carter*, 462 Mich 206, 214-216; 612 NW2d 144 (2000). A waiver extinguishes any error, leaving no error to review. *Id.* at 216.

### III. RIGHT OF CONFRONTATION

The redacted version of the transcript of defendant's interview included references to a statement that Plewa made to the police. Defendant contends that he was denied his right of confrontation because he did not have the opportunity to cross-examine Plewa about that alleged statement. Because defendant did not specifically challenge the inclusion of Plewa's statement or argue that reference to her alleged statement violated his constitutional right of confrontation, his present argument is unpreserved. *Bulmer*, 256 Mich App at 35. Accordingly, we review this unpreserved issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

During direct examination, the detective explained that by the time of defendant's interview, Plewa had been interviewed and defendant and Plewa's home and Plewa's vehicle had been searched. The detective advised defendant of these facts during the interview. Defendant takes issue with the detective being allowed to read the following emphasized passage from the interview:

I said, well, maybe you were drinking that day and maybe you decided to make a stupid decision and you were that desperate for money. Okay? *She explained to me how you guys left the house. You were driving like an idiot and you went in the Alibi lot. You backed up, you floored the car, you got out, you grabbed, said give me your purse. Took the lady's red purse and you took off out of the lot like a bat out of hell.* Now, this is your time and your only opportunity to tell me what really happened. Okay? Once I leave here, it's I'm not, I'm not going to be here to listen to you anymore. I'm giving you that opportunity.

He responded with, I'm not admitting to something I didn't do. I don't rob people.

I said, okay.

He said, I have done a lot of nasty shit in my life, but I don't rob people. [Emphasis added.]

Hearsay, which is a statement other than one made by the declarant while testifying at the trial or hearing offered to prove the truth of the matter asserted, is inadmissible at trial unless there is a specific exception allowing its introduction. See MRE 801, MRE 802, and *People v Ivers*, 459 Mich 320, 331; 587 NW2d 10 (1998). The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007), citing *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "Statements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." *Crawford*, 541 US at 52. "However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Chambers*, 277 Mich App at 10-11; see also *Crawford*, 541 US at 59.

Defendant has not established a plain error affecting his substantial rights. Plewa's statement was not offered to prove the truth of the matter asserted, i.e., to prove that defendant robbed Graham, or for the purpose of establishing the truth of Plewa's statement during the interview. Rather, Plewa's statement was offered to provide context for the police interview, that is, to show what information was conveyed to defendant to prompt his responses, and to show defendant's reaction to Plewa's statement while giving his own statement. Plewa's statement provided context for understanding and evaluating defendant's answers. "[A] statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause." *Chambers*, 277 Mich App at 11. Because the statement was used for the limited purpose of providing context for defendant's responses and not to prove the truth of

the matter asserted, it did not constitute hearsay, or a statement of an absent declarant such that defendant's confrontation rights were violated.

## IV.  PROSECUTOR'S CONDUCT

Defendant argues that the prosecutor denied him a fair trial by introducing defendant's custodial statement, which defendant contends contained improper evidence and argument, and by mischaracterizing in closing argument Graham's testimony about the suspect vehicle. Because defendant did not object to the prosecutor's remarks, or raise a claim that the prosecutor committed misconduct by introducing his statement, these claims of prosecutorial misconduct are unpreserved and our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

## A.  INTRODUCING DEFENDANT'S STATEMENT

"[A] prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 72; 732 NW2d 546 (2007).  There is nothing in the record to support that the prosecutor was operating in bad faith or introduced defendant's custodial statement for any improper purpose.  The parties went through the transcribed interview, defense counsel requested that certain portions be redacted, and the trial court ruled on defendant's requests, ordering redaction in some instances and, in others, concluding that redaction was not appropriate because the detective's questions placed defendant's answers in context.  Defendant did not raise any argument below that the prosecutor was engaging in misconduct by seeking to introduce the statement, nor did defense counsel object during the detective's testimony on any of the grounds he now argues.  Because there is simply no basis for concluding that the prosecutor intended to inject improper evidence or argument, we cannot conclude that the prosecutor acted in bad faith or that he engaged in misconduct amounting to plain error.[2]

---

[2] We note defendant's argument that, as the detective read the transcribed interview, it included a reference to defendant's record that the parties and the court had agreed to redact.  The interview transcript provides:

> *Defendant:*  I've done a lot of nasty shit in my life.  But I don't rob people.

> *The Detective*:  And we know that, and we understand that obviously. We've looked at *your record*.  Like she said, we've been working on this case for a week.  [Emphasis added.]

Although the reference to defendant's record was not redacted, there is no indication that the prosecutor intentionally did not remove it.  Further, defendant himself stated that he had done "a lot of nasty shit" in his life.  It is apparent that the inadvertent brief reference to defendant's unspecified record did not cause his conviction.  Moreover, defense counsel did not object and request a curative instruction that could have cured any perceived prejudice, *Watson*, 245 Mich App at 586, and defendant has not demonstrated that the apparent mistake affected his substantial rights.  *Carines*, 460 Mich at 763-764.

## B. CLOSING ARGUMENT

Defendant argues that the prosecutor mischaracterized the evidence when he stated during closing argument that Graham had described the suspect vehicle as "boxy" and gave "various color[s], either dark, blue, dark blue or black." Although prosecutors may not argue facts not in evidence or mischaracterize the evidence presented, they are free to argue the evidence and all reasonable inferences that arise from the evidence in relationship to their theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). At trial, Graham described the suspect vehicle as "dark, kind of boxy car," and testified that she told the police that it was "either black or navy blue. [She] know[s] it was dark," "dark, either black or navy blue." She acknowledged that her statement to the police listed her description of the car as "dark or black," but she again testified that it could have been either "a dark blue car or a black car." The prosecutor's remarks are supported by Graham's testimony and reasonable inferences arising from it. *Bahoda*, 448 Mich at 282. Accordingly, there was no error and defendant is not entitled to relief on this issue.

## V. DEFENDANT'S HABITUAL OFFENDER SENTENCE

The trial court sentenced defendant, a fourth habitual offender, to a mandatory minimum term of 25 years for his armed robbery conviction, in accordance with MCL 769.12(1)(a). Defendant argues that a mandatory minimum sentence was not authorized because his prior conviction for second-degree fleeing or eluding does not qualify as a "listed prior felony" within the meaning of MCL 769.12(1)(a). We review questions of statutory interpretation de novo. *People v Buehler*, 477 Mich 18, 23; 727 NW2d 127 (2007).

Under MCL 769.12(1)(a), a mandatory minimum sentence of 25 years "shall" be imposed "[i]f the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies." MCL 769.12(6)(c) categorizes armed robbery as a "[s]erious crime," and MCL 769.12(6)(a)(i) includes second-degree fleeing or eluding, MCL 257.602a, which is one of defendant's prior felony convictions, as a "listed prior felony." Accordingly, defendant's enhanced sentence was required under the plain language of MCL 769.12(1).

Defendant's argument that the Legislature could not have intended fleeing or eluding to be a listed prior felony where there were no injuries to third parties, finds no support in the statutory language. The Legislature is presumed to intend the meaning it plainly expressed, *People v Petty*, 469 Mich 108, 114; 665 NW2d 443 (2003), and courts may not speculate as to the intent of the Legislature beyond the language plainly expressed in the statute. *People v Hock Shop, Inc*, 261 Mich App 521, 528; 681 NW2d 669 (2004). Had the Legislature intended to exclude the offense of second-degree fleeing or eluding from MCL 769.12(6)(c), or condition its inclusion on whether a third party was injured, it could have done so. *People v Ramsdell*, 230 Mich App 386, 392; 585 NW2d 1 (1998). We therefore affirm defendant's enhanced sentence of 25 to 60 years' imprisonment for his armed robbery conviction.

## VI. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional prosecutorial misconduct and ineffective assistance of counsel issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. We disagree with each of defendant's claims.[3]

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Because defendant failed to raise his ineffective assistance of counsel claims in the trial court in connection with a motion for a new trial or request for an evidentiary hearing, our review of these claims is limited to mistakes apparent from the record. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). To establish ineffective assistance of counsel, defendant first must show that counsel's performance was below an objective standard of reasonableness. In doing so, defendant must overcome the strong presumption that counsel's assistance was sound trial strategy. Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994); *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated in part on other grounds, 493 Mich 864 (2012). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id.* at 22-23. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## 1. FAILURE TO CONFER WITH AND FOLLOW DEFENDANT'S INSTRUCTIONS

Contrary to what defendant asserts as a basis for many of his claims, defense counsel was not ineffective for failing to act in accordance with defendant's instructions or consult with him about what exhibits and other evidence to present at trial. Decisions about defense strategy, including what arguments to make, what evidence to present, whether to call witnesses, and how to impeach witnesses are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and counsel has wide discretion in matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). As hereafter discussed, defendant has not identified any omission that prejudiced his case.

## 2. FAILURE TO PROPERLY CROSS-EXAMINE GRAHAM

---

[3] In his Standard 4 brief, defendant also challenges the admission of his statement on grounds that have already been addressed. As explained in sections I and IV(A), *supra*, the trial court did not err by admitting the statement, and the prosecutor did not act in bad faith by introducing it.

Defendant argues that had defense counsel "properly" cross-examined Graham at the preliminary examination about her description of the suspect vehicle, he would not have been bound over for armed robbery. Defendant ignores that "the level of proof at the preliminary examination stage does not require positive proof of guilt, but only some evidence of each element" of the charged crime. *People v Oliver*, 170 Mich App 38, 44; 427 NW2d 898 (1988), mod 433 Mich 862 (1989). Plewa's vehicle was dark blue, and Graham, who was wearing dark sunglasses and saw the vehicle for less than 20 seconds, initially described the vehicle as black or *dark*. Considering the circumstances of Graham's observation of the vehicle and the other strong circumstantial evidence that connected defendant to the robbery, any additional questions by defense counsel regarding Graham's description of the vehicle at the preliminary examination would not have exonerated defendant from the robbery charge. Therefore, this claim fails.

### 3. COUNSEL'S UNPREPAREDNESS

Defendant makes several claims that defense counsel was unprepared to try the case. "A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). When claiming ineffective assistance due to defense counsel's unpreparedness, a defendant must show prejudice resulting from the lack of preparation. *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990).

The record does not support defendant's assertion that defense counsel was unprepared to try the case. First, defendant has not established factual support for his claim that defense counsel "abandoned" him for two months before trial and was therefore unprepared. To the contrary, defense counsel's petition for attorney fees indicates that he visited defendant at least five times before trial. Defendant even asserts in his Standard 4 brief that "on Thursday morning, counsel came to see the defendant prior to the start of trial . . . ." In addition, defendant does not indicate what valuable information or defense might have been generated had counsel made any additional visits. Defendant argues that defense counsel was not adequately familiar with the discovery packet provided by the prosecution and requested additional discovery. Defendant has not demonstrated, however, what additional "broad discovery" defense counsel could have obtained and presented at trial that would have favorably altered the case. Although defendant claims that counsel should have introduced a diagram showing his home, the restaurant, and a gas station, the prosecution introduced three overviews of the area and defendant has not demonstrated that any additional illustration of the area was necessary or would have been helpful. He also has not persuasively argued what would have been different had he, himself, examined the exhibits before counsel stipulated to their admission.

The record also belies defendant's argument that defense counsel's unpreparedness is evident from his failure to offer a substantial defense or a "defense theory whatsoever." The record demonstrates that defense counsel's strategy was to concede defendant's guilt of the financial transaction device offenses, but deny his culpability for armed robbery. Defense counsel clearly and vigorously presented a defense of misidentification and also challenged the adequacy of the police investigation. Defense counsel challenged the discrepancies in Graham's and eyewitness Laura Cox's accounts, and argued that the perpetrators were the occupants of a black vehicle who the police had originally investigated. Counsel suggested that the police

rushed to judgment because of defendant's involvement in the credit card offenses, and argued that there was reasonable doubt regarding defendant's involvement in armed robbery.

Defendant does not indicate what additional rational argument defense counsel could have made. To the extent that defendant relies on the fact that defense counsel's defense was not successful, nothing in the record suggests that defense counsel's presentation of the defense was unreasonable or prejudicial. Again, counsel's decisions about how to argue the evidence are matters of trial strategy, *Rockey*, 237 Mich App 74, and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

## 4. FAILURE TO CALL WITNESSES

Defendant argues that defense counsel should have investigated "all witnesses who may have information" and should have called a fingerprint expert, an investigator, Plewa, himself, and the two officers who first arrived at the scene of the robbery. As noted, defense counsel's decisions regarding whether to call witnesses are presumed to be matters of trial strategy, *Rockey*, 237 Mich App at 76, and the failure to present a witness can constitute ineffective assistance only where it deprives the defendant of a substantial defense. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). With regard to the potential unnamed witnesses, "counsel cannot be found ineffective for failing to pursue information that his client neglected to tell him." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005).

Defendant has not demonstrated how the named proffered witnesses were valuable to his defense, and he has not overcome the strong presumption that counsel chose not to call these additional witnesses as a matter of trial strategy. Defendant asserts that the officers would have testified that Graham and Cox initially described the vehicle as black and that Graham initially gave a license plate number of CKO1517. However, the record discloses that defense counsel elicited this information through his cross-examination of the witnesses. Graham acknowledged that the trial was the first time she described the car as blue and that she could have listed the plate as CKO 1517, although, in her written statement, she listed the plate number as C_S1517. Defense counsel also confirmed Cox's testimony that she described the vehicle to the police as black. Other than providing information that was adequately covered through other witnesses, defendant does not state what new helpful information the officers could have offered that would have affected the outcome of the trial.

With regard to a fingerprint expert "to recover fingerprints from [Graham's] purse," defendant has not made an offer of proof regarding the substance of any favorable testimony that an expert witness could have offered. A defendant cannot establish his claim of ineffective assistance of counsel using speculation that an expert would have testified favorably. *Payne*, 285 Mich App at 190. Moreover, defendant has failed to overcome the presumption that defense counsel's decision not to call an expert witness was reasonable trial strategy. *Id.* Counsel elicited from the detective in charge of the case that the police had not fingerprinted the purse. Given defendant's mistaken identification defense, it was sound trial strategy for defense counsel not to pursue fingerprint evidence from the red purse, which was found in defendant's house, and

to instead highlight that the police failed to fingerprint the purse. Through means of cross-examination, defense counsel challenged the strength and reliability of the identification testimony, and elicited arguable bases for the jury to question the accuracy of the identification. Defendant has failed to show that defense counsel's strategy was objectively unreasonable, or that he was prejudiced by the absence of an expert at trial.

Defendant has also failed to demonstrate that defense counsel was ineffective for failing to request the appointment of an investigator to obtain further information about the occupants of a black Jeep who were initially investigated as possible suspects. A court-appointed investigator is not "automatically mandatory but rather depends upon the need as revealed by the facts and circumstances of each case." *People v Blackburn*, 135 Mich App 509, 520-521; 354 NW2d 807 (1984) (citation omitted). The trial court has discretion to determine whether an indigent defendant has demonstrated that an investigator is necessary to ensure due process, and a defendant's reasons cannot rest on "pure conjecture." *People v Johnson*, 245 Mich App 243, 260; 631 NW2d 1 (2001). Defendant does not specify what helpful or valuable information needed to be obtained by an investigator. Police witnesses testified at trial, explaining that they initially investigated a male and a female who were in a black Jeep, why they first investigated those persons, and why they ultimately ruled them out as suspects. Defense counsel discussed the initial suspects in closing argument, including that the male's appearance was consistent with defendant's appearance. Defendant's reasons for now arguing that an investigator was needed are based on pure conjecture. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant further argues that Plewa's testimony would have exonerated him of the armed robbery charge. In an affidavit, Plewa averred that neither she nor defendant committed armed robbery, they found Graham's red purse on the side of the road, and they used the credit cards that were inside the purse. She further averred that she would have testified at defendant's trial, but defense counsel stated that "he did not believe [her] and would not allow [her] to commit perjury." At trial, defense counsel placed on the record that "it's a group decision, with my client's final decision, that we are not going to call [Plewa] as a witness." Defendant acknowledged that he agreed with the strategy to not call Plewa as a witness, that he "underst[oo]d all of the ramifications why [he] made that decision," and that "it's ultimately [his] decision." Thus, the record shows that defendant chose to follow defense counsel's advice to not call Plewa as a witness at trial.[4] Further, a defense attorney is not ineffective for failing to call a witness whom he believes is going to commit perjury. *People v Toma*, 462 Mich 281, 303 n 16; 613 NW2d 694 (2000). Therefore, counsel's reasons for not calling Plewa as a witness cannot be considered objectively unreasonable. *Gioglio*, 296 Mich App at 22. Defendant has not properly shown that this decision was clearly unreasonable.

---

[4] At sentencing, defense counsel discussed his and defendant's decision not to call Plewa to the stand, stating that defendant "also did not want the codefendant to commit perjury and he did not want her to testify and put herself in any kind of jeopardy."

Defendant also argues that defense counsel deprived him of his right to testify at trial. In a related sub-issue, defendant adds that he falsely confessed to the robbery in writing to defense counsel and, even though counsel knew the confession was false, he threatened to withdraw from representation if the defendant testified. A criminal defendant has a fundamental constitutional right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. The decision to testify or not to testify is a strategic one "best left to an accused and his counsel." *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla–Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objections." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id.* (citation and quotations omitted).

There are no grounds to conclude that counsel's performance deprived defendant of his constitutional right to testify. There is no record evidence that defense counsel threatened to withdraw from the case if defendant testified. The record shows that, after the prosecution rested, defense counsel stated on the record that he and defendant had discussed whether defendant was going to testify and defendant agreed that he would not testify. Defendant was advised of his right to testify or not testify, and defense counsel explained on the record that the decision whether to testify is defendant's and "no one else's." Defendant stated that he understood that the decision was his, and that he was not forced or threatened in any way in making his decision not to testify. Defendant never expressed disagreement with counsel's statement that he did not wish to testify, did not claim that he was ignorant of his right to testify, or that defense counsel had coerced him into not testifying. The decision whether to call defendant as a witness was a matter of trial strategy and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy. *Rockey*, 237 Mich App at 76.

## 5. FAILURE TO FILE MOTIONS TO SUPPRESS EVIDENCE

Defendant argues that defense counsel should have moved to suppress the seized BB and simulated guns. Graham testified that the robber pointed a gun at her as he demanded her purse. "Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by the courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989); see also MRE 401. The theories for which the evidence was admissible were legitimate, material, and contested grounds on which to offer the evidence. Defendant has not established that a motion to suppress the evidence would have been successful.

Cox testified that the suspect vehicle had something yellow on the back of it. At the time of defendant's arrest, an officer observed that there was a yellow reflective checkmark symbol over the license plate, and explained that the yellow reflective sticker fell off during transport of the vehicle to the police station. Defendant now argues that defense counsel should have moved to suppress "any mention" of the yellow sticker on the back of Plewa's vehicle because it fell off during the transport of the vehicle to the police station. However, absent intentional suppression or a showing of bad faith, a loss of evidence that occurs before a defense request for its

-15-

production does not require suppression. *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). The defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith. *Id.* Defendant has failed to show intentional suppression or bad faith.

Defendant further argues that defense counsel should have moved to suppress evidence of the ski mask seized from his home because the search warrant was invalid, inasmuch as it was based on false statements, and contained Plewa's photograph and statements and references to prior contact with defendants. Defendant fails to provide any legal support for his proposition that it was impermissible to include Plewa's photographs and statements in the search warrant. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Further, there is a presumption of validity with respect to the affidavit supporting a search warrant. *People v Turner*, 155 Mich App 222, 226; 399 NW2d 477 (1986). In *Franks v Delaware*, 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 2d 667 (1978), the United States Supreme Court delineated the standard for holding an evidentiary hearing:

> To mandate an evidentiary hearing, the challenger's attack *must be more than conclusory* and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and *those allegations must be accompanied by an offer of proof.* They should point out specifically the portion of the warrant affidavit that is claimed to be false; *and they should be accompanied by a statement of supporting reasons* . . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. [Emphasis added.]

"The defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *People v Ulman*, 244 Mich App 500, 510; 625 NW2d 429 (2001). Defendant has failed to make a substantial preliminary showing that the affiant intentionally, or with reckless disregard for the truth, made a false statement or material omission in the affidavit in support of the search warrant. In fact, defendant has not even set forth the statements that he is claiming were false. Simply put, defendant's conclusory attacks do not overcome the presumption of validity with respect to the affidavit supporting the search warrant. Thus, defendant has failed to overcome the presumption that defense counsel's decision not to challenge the validity of the search warrant was objectively reasonable.

## 6. GRAHAM'S IN-COURT IDENTIFICATION OF DEFENDANT AT TRIAL

At trial, while looking at defendant, Graham testified that the robber had the same build, face shape, skin color, and height as defendant, but, because of the ski mask, she could not see enough of the perpetrator to identify him. Defendant argues that defense counsel was ineffective for failing to move to suppress the "identification" by Graham, which was highly prejudicial.

Defendant's argument lacks merit. To the extent that there was an identification, the relief that defendant requests is appropriate only when an identification is the product of an unduly suggestive pretrial identification procedure. See *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). Here, there was no pretrial identification procedure. Rather, Graham's identification testimony was based on her account of the offense. Although defendant contends that there are reasons to question the reliability of Graham's identification, defendant was not prevented from exploring this issue at trial, and defense counsel did so. It was up to the jury to determine whether Graham's identification was reliable and credible in light of the factors identified by defendant. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Accordingly, a motion to suppress Graham's identification testimony would have been futile. *Ericksen*, 288 Mich App at 201.

### 7. FAILURE TO MOVE FOR ADJOURNMENT

"No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown . . . ." MCL 768.2. Where an adjournment is denied, a defendant must show prejudice as a result of a trial court's abuse of discretion in denying the adjournment. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). Here, defense counsel never expressed that he was unprepared to start trial, and defendant has not demonstrated any valuable evidence or substantial defense that was lost because of counsel's alleged unpreparedness. Because defendant has not established that good cause for an adjournment existed, or that he was actually prejudiced by the lack of an adjournment, defendant cannot establish that defense counsel acted unreasonably in not making that futile request. *Ericksen*, 288 Mich App at 201.

### 8. FAILURE TO OBJECT TO THE PROSECUTOR'S CONDUCT

We reject defendant's argument, related to sections II and VI(B), that he was denied the effective assistance of counsel because defense counsel failed to object to the prosecutor's conduct. As explained in those sections, the prosecutor's conduct did not deny defendant a fair trial. Therefore, defense counsel's failure to object was not objectively unreasonable. Further, because the trial court's instructions adequately protected defendant's rights, defendant cannot demonstrate a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. Consequently, defendant cannot establish a claim of ineffective assistance of counsel.

### 9. FAILURE TO ADEQUATELY CONDUCT THE *WALKER* HEARING

Defendant further argues that defense counsel inadequately conducted the *Walker*[5] hearing because he failed to call as a witness either the hospital treating doctor or nurse to testify about his condition at the time of the interview. Defendant has not overcome the strong presumption that counsel chose not to call either of those witnesses as a matter of trial strategy. *Rockey*, 237 Mich App at 76. Moreover, defendant has not provided any witness affidavits, or

---

[5] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

identified any other evidence of record establishing that either witness would have provided favorable testimony. Absent such a showing, defendant has not established that he was prejudiced by defense counsel's failure to call the proposed witnesses.

## 10. FAILURE TO ADEQUATELY CONDUCT VOIR DIRE

Defendant argues that defense counsel allowed several biased jurors, who defendant contends had been victims of either credit card fraud or robbery, or knew someone who had been robbed, to remain on the jury. Jury selection is a matter of trial strategy and defendant has not overcome the heavy presumption that defense counsel used effective trial strategy. *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). A trial attorney has the opportunity to view "a potential juror's facial expressions, body language, and manner of answering questions," which are possibly the most important criteria in jury selection. *Id.* Choosing a jury based on observations and hunches may be as valid as any other method of jury selection. *Id.*; see also *People v Robinson*, 154 Mich App 92, 95; 397 NW2d 229 (1986). As this Court observed in *Unger*, 278 Mich App at 258, because an appellate court "cannot see the jurors or listen to their answers to voir dire questions," it is "disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror." (Internal citations omitted.)

Further, there is no evidence that any juror's prior experience affected the verdict. Jurors are also presumptively impartial, and once a juror assures the trial court of an ability to remain impartial, the defendant must demonstrate that the juror is partial or biased. *Johnson*, 245 Mich App at 259-260. The jurors promised to be fair and swore to try the case justly. The jury was reminded of that oath before it began deliberating. The jurors were instructed that they must not let sympathy or prejudice influence their decisions. Consequently, defendant has not shown that he was prejudiced by defense counsel's decision to allow the jurors to remain on the jury.

## 11. HARMFUL CLOSING ARGUMENT

Defendant claims that defense counsel acted "like a second prosecutor" by making several "harmful" statements about defendant during closing argument. Counsel's decisions about how to argue the evidence are matters of trial strategy. *Rockey*, 237 Mich App 74. Defendant has not overcome the strong presumption that defense counsel's performance was within the range of reasonable professional conduct. *Gioglio*, 296 Mich App at 20.

Although defense counsel stated that the prosecutor was fair and told the jurors facts as he believed them, counsel followed those remarks by presenting several misstatements that counsel believed the prosecutor had made, and counsel told the jurors to review the evidence to support their conclusions. Defendant notes that counsel argued that it was easy to say that defendant was guilty of armed robbery because he used the credit cards, but defendant fails to note that counsel then argued that such a conclusion would overlook the evidence that was actually introduced at trial. While defense counsel made comments about Graham's state of mind, i.e., that she was upset and hysterical, they were not made to evoke sympathy for Graham, but to support the argument that her agitated state of mind negatively affected her observations during the offenses, which caused mistakes in her recounting what occurred and influenced her testimony at trial. Defense counsel's comments about the "expert" police detective not being able to obtain fingerprints from Graham's purse was part of his argument that there was

-18-

reasonable doubt concerning defendant's guilt because of the less than adequate police investigation. Regarding defendant's claim that counsel unduly emphasized that the defense did not call any witnesses, counsel's argument was clearly intended to stress that the case should not be decided based on which side presented more witnesses or evidence, and that the burden of proof was on the prosecution. In closing argument, defense counsel summarized the testimony and argued that defendant's identification as the robber was not established beyond a reasonable doubt. The record does not establish that defense counsel's performance fell below an objective standard of reasonableness.

## 12. FAILURE TO REQUEST THE FORMER REASONABLE DOUBT INSTRUCTION

As defendant acknowledges, the trial court's reasonable doubt instruction was modeled after CJI2d 3.2. This Court has held that CJI2d 3.2 adequately conveys the concept of reasonable doubt. See *People v Hill*, 257 Mich App 126, 151-152, 667 NW2d 78 (2003), and *People v Werner*, 254 Mich App 528, 538; 659 NW2d 688 (2002). Therefore, defendant has not shown that counsel's failure to object to the instruction was objectively unreasonable. *Gioglio*, 296 Mich App at 22.

## 13. ADDITIONAL CURSORY CLAIMS

Defendant makes additional cursory complaints about what counsel failed to do, without providing any proper analysis. As previously noted, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). Consequently, defendant's remaining claims of ineffective assistance of counsel are abandoned. *Id.*

## 14. CUMULATIVE EFFECT OF COUNSEL'S ERRORS

We lastly reject defendant's argument that the cumulative effect of several minor errors denied him a fair trial. Because multiple errors have not been found, there can be no cumulative effect that denied defendant a fair trial. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

## B. PROSECUTOR'S CONDUCT

Defendant failed to raise his additional claims of prosecutorial misconduct below, leaving those issues unpreserved and limiting our review to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

## 1. GRATUITOUS MENTION OF DEFENDANT'S ALCOHOL USE

Defendant complains that on several occasions in opening statement and closing argument, the prosecutor referenced defendant's alcohol consumption. As plaintiff aptly notes, evidence at trial revealed that a great deal of alcohol was purchased with the stolen credit cards, alcohol was found in defendant and Plewa's home during the execution of a search warrant,

-19-

defendant blamed his use of alcohol for the faultiness of his recollection regarding the time surrounding the offenses, and the desire to obtain alcohol was posited as a motive for the crimes. Given the evidence adduced at trial, the prosecutor's references to defendant's alcohol consumption were proper comments on the evidence and reasonable inferences arising from the evidence. *Bahoda*, 448 Mich at 282.

## 2. MISSTATED THE EVIDENCE OF RECORD

Defendant argues that the prosecutor misstated the evidence and impermissibly commented on his right to remain silent when he stated that defense counsel had argued in closing argument that defendant was "saying" he is guilty of the financial transaction device offenses, but not guilty of the robbery. The prosecutor commented that defendant had not "said" anything. The prosecutor correctly pointed out to the jury what was evidence and what was argument, and then commented about the statements that defendant did make to the detective, which was evidence that the jury could consider. Defendant has failed to show that the prosecutor's argument was improper. Further, the trial court's instructions that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions were sufficient to dispel any perceived prejudice and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001).

## 3. APPEALED TO THE JURY'S SYMPATHY

Defendant further argues that the prosecutor impermissibly appealed to the jury's sympathy when he elicited testimony from Graham and a detective about Graham's mental state at the time of the robbery, and then used that evidence to argue in closing argument that defendant's actions placed Graham in fear. Although prosecutors may not resort to arguments that ask jurors to sympathize with the victim, *Watson*, 245 Mich App at 591, the prosecutor did not ask the jury to convict defendant based on emotions or sympathy. *People v Cooper*, 236 Mich App 643, 653; 601 NW2d 409 (1999). Rather, viewed in context, the prosecutor was making a permissible argument regarding one of the elements of the armed robbery charge—that the defendant used force or violence against a person who was present or assaulted or put the person in fear. *Chambers*, 277 Mich App at 7.

## 4. MISCHARACTERIZED THE EVIDENCE

Defendant argues that the prosecutor untruthfully argued at trial that defendant had confessed. In opening statement, the prosecuted stated that defendant's comment during questioning by the police regarding how much time he was going to get equated to a confession. In closing argument, the prosecutor discussed defendant's changing stories during the interview, noting that he first fervently denied committing the robbery and, after the detective confronted him with certain evidence, defendant asked, "How much time am I looking at," and argued that defendant's statement showed consciousness of guilt. This argument was a proper comment on the evidence and reasonable inferences drawn therefrom and, therefore, was not plainly improper. *Bahoda*, 448 Mich at 282. Further, the trial court's instructions were sufficient to dispel any perceived prejudice and to protect defendant's substantial rights. *Long*, 246 Mich App at 588.

Defendant also argues that although Cox testified at trial that she did not see the robber, the prosecutor erroneously argued in closing argument that she had seen the perpetrator. The record reveals, however, that the prosecutor argued that because Cox testified that she saw something yellow, it could be inferred that she may have noted the yellow on the back of defendant's sweatshirt or the yellow sticker on the back of Plewa's car. The prosecutor's remarks were supported by this testimony and reasonable inferences arising from it. *Bahoda*, 448 Mich at 282. To the extent that the prosecutor suggested that Cox saw Graham give the perpetrator her purse, defendant did not object, and the trial court's instruction that the lawyers' statements were not evidence was sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *Long*, 246 Mich App at 588.

## 5. PERJURED TESTIMONY

Defendant highlights instances where Graham's trial testimony about her description of the color and license plate number of the suspect vehicle differed from her police statement, or was contradicted by other witnesses to argue that the prosecutor knowingly used perjured testimony. However, the inconsistencies listed by defendant do not establish that the prosecutor knowingly used perjured testimony to obtain defendant's conviction. *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013); *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Although Graham's trial testimony that the vehicle was black, dark, or blue differed from her prior statement that the vehicle was black or dark, there is no indication that the prosecutor sought to conceal this alleged inconsistency from defendant. Likewise, the issues concerning the license plate numbers were explored at trial. Testimony that conflicts with other witnesses' testimony does not require the conclusion that the prosecutor knowingly used perjured testimony. The prosecution is not obligated to disbelieve its own witness merely because the witness's testimony is contradicted by testimony from another witness. See *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled in part on other grounds in *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014). Defendant's argument does not involve an issue of perjury, but of credibility. Defense counsel fully explored the credibility issues with Graham's testimony, as well as other prosecution witnesses. The jury was free to either believe or disbelieve their trial testimony. See *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

## 6. IMPROPER COMMENT ON REASONABLE DOUBT

Defendant argues that the prosecutor misstated the law on reasonable doubt when he stated:

> So this case is kind of a puzzle, isn't it? It's like a puzzle. It's like a jigsaw puzzle and you have to take the pieces of the puzzle and put the pieces together. You put enough of the pieces together and you can see the picture. And isn't that what jigsaw puzzles are like? You don't have to have every piece of the puzzle before you can see the picture.

> And so you don't need in this case to have all of the pieces to see the picture. When you have enough of the pieces to see the picture here, the case has been proven beyond a reasonable doubt. It's another way to look at what

reasonable doubt means. When you see enough of the pieces to tell what the picture is, then it's been proven beyond a reasonable doubt. If you can't see what the picture is, it's not proven beyond a reasonable doubt.

Our Supreme Court has used a similar analogy, observing that "the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt. . . . If enough pieces of a jigsaw puzzle fit together the subject may be identified even though some pieces are lacking." *People v Hardiman*, 466 Mich 417, 425-426; 646 NW2d 158 (2002) (citation omitted). Therefore, the prosecutor's remarks were not improper. Moreover, the trial court correctly instructed the jury on reasonable doubt and instructed the jury to follow the court's instructions. The court's instructions protected defendant's substantial rights.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens